Milligan, J.,
delivered the opinion of the Court.
This is an action of trespass on the case, brought in the Circuit Court 'Of Davidson, to recover damages for the conversion of a slave, called Spencer, who, as it is alleged, was killed while in the employment of the plaintiff in error. There was judgment by default, for the defendant in error, and a writ of inquiry awarded; and the damages, on its execution, assessed by a jury at $900. Motions to set aside the judgment by default, and the verdict of the jury assessing the damages, were repeatedly made and disallowed by the Court, and an appeal in error prosecuted to this Court.
*488 Various questions were presented in the record, which have been discussed with much zeal and ability on both sides. The first which we deem necessary to notice, arises out of the judgment by default. It is insisted that it was taken before the declaration was filed, and that it is, therefore, a nullity. The record shows that the summons was returned, regularly executed, to the January Term, 1860, and that a paper, regular in form, purporting to be a declaration, and properly entitled, of the January Term, I860, was on file, without the Clerk’s indorsement as to the time when it was filed. The Code, section 2895, provides: “All pleadings shall be indorsed by the Clerk when filed, with the time, and date; and for want of such an indorsement, may be rejected by the Court on motion, unless sufficient cause be shown.”
It is insisted that this provision of the Code is imperative, and that a declaration, which accident or design may have placed on the file without the Clerk’s indorsement, is not such a legal paper as the defendant would be bound to notice by plea or otherwise. A paper is said to be filed, when it is delivered to the proper officer, and by him received to be kept on file; and papers put together and tied in bundles, are called a file: 1 Baurice, title “Lieb.,” citing Vin. Ab., 211. The Clerk’s indorsement, under our practice, is necessary .to give the opposite party notice of the true time at which the declaration or plea was filed, so that he may know when to plead or reply; but it is not an absolute pre-requisite to the validity of the declaration or plea, as clearly aj>pears from the lan *489 guage of tbe Statute itself. The Statute, in terms, authorizing the Court, on motion, to reject a paper not so indorsed, or at his discretion, for sufficient cause shown, to retain it on the file, and compel the opposing party to answer it; or the opposite party may waive his right to have it stricken off the file, and plead or reply; and after plea or verdict, on judgment by default, regularly taken and entered, without motion to reject it, he' must be held to have waived his right under the Statute. The law, after the execution of the summons and its return into Court, presumes the parties, in person or by attorney, to be present in Court and superintending their cause, and if, by their own act, they -waive the right the law confers upon them, or through inexcusable negligence fail to take advantage of it, they cannot, after judgment, be heard to complain.
It is next insisted; that there is a fatal variance between the declaration and the judgment by default. The writ and declaration, as it is alleged, are in tort, and the judgment in contract. We do not think the ground of defense can be maintained. ’ The judgment, it is true, is couched in awkward phraseology, but under our liberal practice, it contains every requisite to make it a valid judgment, and in form, a sufficient answer to the writ and declaration. The • objectionable words, “occasioned by the non-performance of his promises,” add nothing to the force of the judgment; and when excluded altogether, in no degree diminish or change its operation and effect. They are, therefore, merely surplusage; and under the Code, sec. 2878, *490 may be rejected,-even after judgment by tbe Court in wbicb tbe judgment was rendered, or in tbe revising Court, into wbicb tbe cause' may be removed.
But admitting tbe judgment by default, to be valid, it is further insisted that His Honor, the Circuit Judge, erred in refusing to set it aside; and in support of this proposition, tbe intervention of tbe war, and tbe affidavit of the plaintiff in error, is relied upon. The Courts are bound to take judicial notice of tbe existence of the late war, and its effect in closing the courts of justice; and so far, at least, as tbe rights of parties litigant were prejudiced thereby, to see that they are now properly remedied; but they cannot, under the mere excitement of the times, excuse tbe willful negligence of parties, superintending their own causes pending in Court, while tbe Courts were open. In this case, the record shows, that the January Term, 1860, was tbe regular appearance term; but it fails to show that any steps were taken in tbe cause, from that time until the September Term, 1864, when tbe plaintiff in error, was regularly ¡called out, and for want of a plea, judgment by default, was taken against him, and a writ of inquiry awarded to the next succeeding term. By law, tbe next regular term was in January, 1865, but the record is silent as to any 'steps taken in tbe cause, until the May Term, 1865, when the writ of inquiry was executed, and a judgment final pronounced, on the verdict of a jury, against tbe plaintiff in error, for $900.
Thus, it appears, the Court was open at the appearance term in January, 1860, when it was the *491 duty of the plaintiff m error, to have given his cause the necessary attention; and the presumption in law is, it continued open, at least until after the State affected — under the ordinance of secession, adopted on the 6th of May, 1861 — to withdraw from the Union. During this whole period, there is no evidence, that the plaintiff in error gave his cause the slightest attention; a¡nd his own affidavit, filed on the motion to set aside judgment hy default, utterly fails to furnish any satisfactory excuse for this remarkable inattention. In fact, he does not pretend to account for this ladies, at the appearance and succeeding terms of the Court, but says he had employed counsel, whom he had expected to he present at the September Session, in 1864, when the judgment hy default, was taken, hut that his attorney was absent, attending to important business; hut he had taken the precaution to write to two other attorneys to look after his cause in Court, who, through some misapprehension, had failed to give this particular cause their attention; and that he, the plaintiff in error, was not present, because he did not know that the Court was held in September, 1864. This is such gross negligence, that no Court can excuse it, without overruling the uniform course of decisions in this State, for more than a quarter of a century.
The second affidavit proposed to he read, on a second motion to set aside the judgment hy default, came too late, and was properly refused by the Court. The motion to set aside the judgment by default, had, on a iormer day of the term, been regu *492 larly entered, and on the day next following thereafter, called up, and after argument supported by the affidavit of the plaintiff in error, regularly overruled and discharged. Hence, on the application of the attorney of the plaintiff in error, to read the second affidavit, there was no subsisting motion to set aside the judgment, in support of which it could be read. The refusal of the Circuit Judge to grant a new trial, on the execution of the writ of inquiry, is also assigned as error, and we are asked to reverse on that account. The reluctance with which this Court interferes in matters of practice, with the discretion of the inferior Courts, is too well settled now to admit of controversy. But this discretion must always be a legal, and not an arbitrary discretion. If the latter, and it affects the merits of the action, it is the duty of this Court to interpose for the protection of the right.
• ' By an established practice, adopted for the Circuit Court, sitting in Nashville, under the provisions of the Code, sec. 2948, the causes on the trial docket are apportioned for each week; and under this rule of practice, this cause was noted, “No. 60,” on the first week of the term, and on the regular call of the docket. When it was reached, a motion was entered, as hereinbefore shown, to set aside the judgment by default, which, on the following day, was regularly disposed of. After this, the call proceeded, until all the causes apportioned to the first week of the term were passed; and about three hundred causes called on the docket of the second week of the term, when *493 this cause was, as it is alleged, without notice, called up, out of order, and contrary to the established practice of the Court, and the writ of inquiry executed. The attorney for the plaintiff in error, protested against this irregularity, and again moved the Court to set aside the judgment by default, and offered to support his motion by a second affidavit of his client; but the Court refused to hear the affidavit in support of the motion to set aside the judgment, but said he would hear it under a motion for a new trial.
Under this state of fa’cts, the jury was empanneled, and the writ of inquiry executed; whereupon, the plaintiff in error moved the Court for a new trial, and shortly thereafter, produced and read the affidavit which the Court had refused to hear, on the second application to set aside the judgment by default, with five others, including the affidavit of his attorney. From these affidavits, it appears,' and especially in the affidavit of his attorney, that he expected to defend the execution of the -writ of inquiry, and to prove that the slave, Spencer, was but' of little value; but that his witnesses were not in attendance, and that he had been surprised by the call of the case out of its order.
The Court refused the motion for a new trial, which, under all the circumstances of the case, we think, was error. The rules of practice, established, as they appear to have been, by the authority of law, were certainly arbitrarily disregarded, so far, at least, as to throw the plaintiff in .error off his. guard, and *494 to afford him little or no opportunity to present his witnesses, on the inquiry of damages. This he had a perfect right to do. The judgment by default, established the right to maintain the action, and as a consequence, to some damages. But the quantum of damages remained open to be ascertained by proof; and on the whole case, we feel constrained to grant a new trial, so far only as the assessment of damages are concerned.
Judgment reversed.